IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PROGRESSIVE EXPRESS INSURANCE     CASE NO.:
COMPANY, an Ohio corporation,

    Plaintiff,

v.

THE CASH CONNECTION OF TAMPA
BAY, INC., a Florida Corporation; AIR-
VAC CONNECTION, INC., a Florida
Corporation; BRIAN MEZRAH; and MYA
LEE,

    Defendants.

## COMPLAINT FOR DECLARATORY JUDGMENT

PROGRESSIVE EXPRESS INSURANCE COMPANY ("PROGRESSIVE"), an Ohio corporation, by and through its undersigned attorney, files this Complaint for Declaratory Judgment against Defendants, THE CASH CONNECTION OF TAMPA BAY, INC., a Florida corporation ("CASH CONNECTION"), AIR-VAC CONNECTION, INC., a Florida corporation ("AIR-VAC"), BRIAN MEZRAH ("MEZRAH"), and MYA LEE ("LEE"), and alleges as follows:

1. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201.

### PARTIES, JURISDICTION AND VENUE

2. Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).

3. At all times material hereto, PROGRESSIVE was a corporation organized and existing under the laws of the State of Ohio, with its principal place of business in the State of Ohio.

4. At all times material hereto, CASH CONNECTION was a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Hillsborough County, Florida.

5. At all times material hereto, AIR-VAC was a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Hillsborough County, Florida.

6. At all times material hereto, MEZRAH was a citizen of the State of Florida and resided in Hillsborough County, Florida.

7. At all times material hereto, LEE was a citizen of the State of Florida and resided in Hillsborough County, Florida.

8. This court has subject matter over the instant action pursuant to 28 U.S.C. § 1332(a)(1), because diversity of citizenship exists as between PROGRESSIVE, on the one hand, and Defendants, on the other, and the amount in controversy exceeds $75,000.00.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391, because all defendants reside in this district, the insurance policy at issue was entered into in this district, and the events giving rise to the insurance claim at issue occurred in this district.

## THE PROGRESSIVE POLICIES

10. PROGRESSIVE issued a Commercial Automobile Insurance Policy, under Policy No. 04406176-9, to CASH CONNECTION, for the policy period from November 3, 2018 to November 3, 2019 (the "CASH CONNECTION Policy"), a copy of which is attached hereto as Exhibit "A", and incorporated by reference herein.

11. PROGRESSIVE issued a Commercial Automobile Insurance Policy, under Policy No. 05612428-9, to AIR-VAC, for the policy period from July 10, 2019 to July 10, 2019 (the

"AIR-VAC Policy"), a copy of which is attached hereto as Exhibit "B", and incorporated by reference herein.

12. The CASH CONNECTION policy insured two motor vehicles, a 2012 Toyota Tacoma and a 2014 Toyota RAV4.

13. The AIR-VAC Policy insured five vehicles, a 2002 Sterling M85, a 2010 Chevrolet Express G1500, a 2016 Izuzu NRR, a 2003 Saab 9-3, and a 2017 Ford Escape.

14. The terms, conditions and exclusions set forth in both the CASH CONNECTION Policy and the AIR-VAC Policy are identical and provide, in pertinent part, as follows:

## GENERAL DEFINITIONS

The following definitions apply throughout the policy. Defined terms are printed in boldface type and have the same meaning whether in the singular, plural, or any other form.

\*\*\*

4. "**Declarations page**" means the document prepared by **us** listing **your** policy information, which may include the types of coverage **you** have elected, the limit for each coverage, the cost for each coverage, the specifically described autos covered by this policy, and the types of coverage for each specifically described auto.

5. "**Insured auto**" or "**your insured auto**" means:
   a. Any **auto** specifically described on the **declarations page**; or
   b. An additional **auto** for Part I - Liability To Others and/or Part II - Damage To Your Auto on the date **you** become the owner if:
      (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
      (ii) **we** insure all **autos** owned by **you** that are used in **your** business;
      (iii) no other insurance policy provides coverage for that **auto**; and
      (iv) **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.

   If **you** add any coverage, increase **your** limits or make any other changes to this policy during the 30 day period after **you** acquire an additional **auto**, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits or make such changes for the additional **auto**. **We** may charge premium for the additional **auto** from the date **you** acquire the **auto**.

3

With respect to Part I - Liability To Others, if **we** provide coverage for an additionally acquired **auto** in accordance with this paragraph b., **we** will provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **declarations page**.

\*\*\*

c. Any replacement **auto** on the date **you** become the owner if:
   (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
   (ii) the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of **your** ownership of the replaced **au-to** or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable; and
   (iii)   no other insurance policy provides coverage for that **auto**.

\*\*\*

14. "**Temporary substitute auto**" means any **auto you** do not own while used with the permission of its owner as a temporary substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction.

\*\*\*

## PART I - LIABILITY TO OTHERS

**INSURING AGREEMENT - LIABILITY TO OTHERS**

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense**, for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. However, **we** will only pay for the **covered pollution cost or expense** if the same **accident** also caused **bodily injury** or **property damage** to which this insurance applies.

**ADDITIONAL DEFINITIONS USED IN THIS PART ONLY**

A. When used in Part I - Liability To Others, **insured** means:
   1. **You** with respect to an **insured auto**.
   2. Any person while using, with **your** permission, and within the scope of that permission, an **insured auto you** own, hire, or borrow except:
      (a) A person while he or she is working in a business of selling, leasing, repairing, parking, storing, servicing, delivering or testing **autos**, unless that business is **yours** and it was so represented in **your** application.
      (b) A person, other than one of **your** employees, partners (if **you** are a partnership), members (if **you** are a limited liability company), officers or directors (if **you** are a corporation), or a lessee or borrower or any of their employees, while he or she is moving property to or from an **insured auto**.

    (c) The owner or anyone else from whom the **insured auto** is leased, hired, or borrowed unless the **insured auto** is a **trailer** connected to a power unit that is an **insured auto**. However, this exception does not apply if the **insured auto** is specifically described on the **declarations page**.

For purposes of this subsection A.2., an **insured auto you** own includes any **auto** specifically described on the **declarations page**.

3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I - Liability To Others.

***

B. When used in Part I - Liability To Others, **insured auto** also includes:

***

3. Any **temporary substitute auto**.

### THE ACCIDENT AND DAMAGES CLAIMED

15. On January 13, 2019, MEZRAH was operating a 2017 Landrover Discovery (the "Landrover") owned by CASH CONNECTION at or near the intersection of 50th Street and 16th Avenue South, in Hillsborough County, Florida when the Landrover struck LEE, a pedestrian, which accident caused serious bodily injuries to her (the "Accident").

16. As a result, LEE has filed a Complaint in the Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida, Case No. 19-CA-5704 against CASH CONNECTION and MEZRAH (the "Underlying Litigation"), a copy of which Complaint is attached hereto as Exhibit "C."

17. Moreover, LEE, through counsel, has made a demand on PROGRESSIVE for damages under the both the CASH CONNECTION policy and the AIR-VAC Policy as a result of the accident.

18. In addition to the CASH CONNECTION Policy and the AIR-VAC Policy described above, PROGRESSIVE also issued a Personal Auto Policy to MEZRAH under Policy No. 80261887 (the "Personal Auto Policy"), for the policy period from Novemer 10, 2018 to May 10, 2019, which policy insured the Landrover.

5

19. PROGRESSIVE, concedes that the Personal Auto Policy does provide bodily injury liability coverage to MEZRAH as a result of the injuries sustained by LEE in the Accident, and to CASH CONNECTION who, it is alleged in the Underlying Litigation, is vicariously liable for the negligence of MEZRAH as the owner of the Landrover

20. PROGRESSIVE is providing a defense to MEZRAH and CASH CONNECTION in the Underlying Litigation pursuant to the terms of the Personal Auto Policy.

## GROUNDS FOR DECLARATORY JUDGMENT

21. PROGRESSIVE contends that neither the CASH CONNECTION Policy nor the AIR-VAC Policy provide bodily injury liabilty coverage to CASH CONNECTION, AIR-VAC or MEZRAH, as a result of the injuries being claimed by LEE.

22. More specifically, PROGRESSIVE contends that the Landrover does not meet the definition of an "insured auto" or "your insured auto" in that it is not specifically described on the Declarations Page, nor does it meet the definition of "additional auto", "replacement auto", or "temporary substitute auto."

23. Accordingly PROGRESSIVE contends that it has no duty to indemnify CASH CONNECTION nor MEZRAH under the CASH CONNECTION Policy or the AIR-VAC Policy for any damages awarded to LEE in the underlying litigation and that should a lawsuit be brought by LEE against AIR-VAC that it likewise has no duty to indemnify AIR-VAC for any damages awarded to LEE in that litigation.

24. There exists an actual, present and practical need for the declaration of coverage under the CASH CONNECTION and AIR-VAC Policies, and the rights and obligations of PROGRESSIVE.

25. There exists a present, ascertained or ascertainable set of facts or present controversy as to a state of facts concerning the rights and obligations of PROGRESSIVE under the CASH CONNECTION and AIR-VAC Policies .

26. The rights and obligations of PROGRESSIVE under the CASH CONNECTION and AIR-VAC Policies are dependent upon the facts and the law applicable to the facts affecting coverage under the CASH CONNECTION and AIR-VAC Policies.

27. PROGRESSIVE and the Defendants have an actual, present, adverse and antagonistic interest in the subject matter described herein.

28. All proper and present antagonistic interests are before the court by proper process.

29. PROGRESSIVE is in doubt with respect to its rights under the CASH CONNECTION and AIR-VAC Policies and, by this Complaint, seeks a declaration of its rights and obligations under the CASH CONNECTION and AIR-VAC Policies with respect to claims asserted against PROGRESSIVE.

30. Pursuant to the provisions of Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201 and 2202, this court is invested with the power to declare the rights and liabilities of the parties hereto and to give such relief as it deems necessary under the facts and circumstances.

WHEREFORE, PROGRESSIVE respectfully requests this Court to enter a declaratory judgment concerning the CASH CONNECTION and AIR-VAC Policies and to declare the existence or non-existence of any immunity, power, privilege or right, or any other fact upon which the existence or non-existence of such immunity, power, privilege or right may depend, including the following:

1. That neither the CASH CONNECTION Policy nor AIR-VAC Policy provides bodily injury liability coverage to CASH CONNECTION, AIR-VAC or MEZRAH as a result of the Accident;

2. That PROGRESSIVE has no duty to indemnify CASH CONNECTION, AIR-VAC or MEZRAH for any damages awarded to LEE as a result of the Accident;

3. Such other relief as this Court may deem just and proper.

DATED: August 29, 2019.

                                      Respectfully submitted,

/s/ *Stuart J. Freeman*
Stuart J. Freeman, Esquire
Florida Bar No. 237493
FREEMAN, GOLDIS & CASH, P.A.
2553 First Avenue North
Post Office Box 12349
St. Petersburg, Florida 33733-2349
Phone:  (727) 327-2258
Fax:     (727) 321-2497
stuart.freeman@fgclawfirm.com

Attorneys for Plaintiff